WITKOW | BASKIN
Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
21031 Ventura Boulevard, Suite 700
Woodland Hills, California  91364
Tel: 818.296.9508 | Fax: 818.296.9510

LATHAM & WATKINS LLP
Jeff Homrig (SBN 215890)
301 Congress Ave., Suite 900
Austin, TX 78701
(737) 910-7300
jeff.homrig@lw.com

Rachel Weiner Cohen (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
rachel.cohen@lw.com

DIAMOND McCARTHY LLP
Allan B. Diamond (*pro hac vice*)
adiamond@diamondmccarthy.com
909 Fannin Street, 37th Floor
Houston, Texas 77010
Tel: 713.333.5100 | Fax: 713.333.5199

*Attorneys for Plaintiff*
*FACET TECHNOLOGIES, LLC*

[Additional Counsel Listed on Next Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FACET TECHNOLOGIES, LLC, | CASE NO. 2:22-cv-01717-MCS-MAR |
| Plaintif, | |
| v. | **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |
| LIFESCAN, INC., | |
| Defendant. | |

LATHAM & WATKINS LLP
Madeleine Ball (SBN 336923)
301 Congress Ave., Suite 900
Austin, TX 78701
(737) 910-7300
madeleine.ball@lw.com

Susan Tull (*pro hac vice*)
Jessica Lam[1] (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
susan.tull@lw.com
jessica.lam@lw.com

Ryan Banks (SBN 318171)
140 Scott Drive
Silicon Valley, CA 94025
(650) 328-4600
ryan.banks@lw.com

DIAMOND McCARTHY LLP
Julian Cokic (*pro hac vice*)
909 Fannin Street, 37th Floor
Houston, Texas 77010
Tel: 713.333.5100 | Fax: 713.333.5199
julian.cokic@diamondmccarthy.com

Grace J. Pak (SBN 277705)
150 California Street, Suite 2200
San Francisco, California 94111
Tel: 415.692.5200 | Fax: 415.263.9200
grace.pak@diamondmccarthy.com

---

[1] Admitted to practice in New York only. All work supervised by a member of the DC Bar.

Plaintiff Facet Technologies, LLC ("Facet"), by and through its undersigned counsel, complain and allege against Defendant LifeScan, Inc. ("LifeScan") as follows:

**NATURE OF THE ACTION / INTRODUCTION**

1.     This action arises from LifeScan's unlawful infringement of a patent owned by Facet, U.S. Patent No. 8,840,635 (the "'635 patent," "Asserted Patent," or "Patent-in-Suit"), under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*

2.     Plaintiff Facet is an innovator of blood glucose monitoring devices. For decades, it has pioneered the design of lancets and lancing devices (together, "lancing systems"), which allow diabetic patients to conduct daily blood draws that are crucial for properly regulating their blood sugar levels. Facet's focus has been to safety and minimizing patient pain. Facet holds patents protecting its important innovations, including the Asserted Patent.

3.     Defendant LifeScan is a private equity-backed company also in the blood glucose monitoring business. LifeScan has been using Facet's proprietary technology and is currently infringing Facet's Asserted Patent for lancets. LifeScan's brand name OneTouch Delica Plus Lancets infringe the Asserted Patent:



*INFRINGING PRODUCT*

4.     LifeScan is well-acquainted with the Asserted Patent. Facet previously manufactured these patented lancets for LifeScan, which it marketed for years under the "Delica" brand name.

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR

5.     In hopes of reaping still more profits, LifeScan chose to undermine the parties' successful eleven-year commercial relationship. LifeScan secretly conspired to undermine Facet's financial stability and to commercialize products that mimicked Facet's patented products and that were manufactured by a third party.

6.     First, LifeScan's then-parent company, Cilag GmbH International ("Cilag"), demanded that Facet temporarily license to Cilag Facet's patents while LifeScan purchased the proprietary lancing systems from Facet. Second, Cilag advanced money to Facet to help fund Facet's manufacture of sufficient quantities of lancing systems to keep up with high levels of demand for Facet's innovative lancing systems. Third, on behalf of LifeScan, Cilag renegotiated the commercial supply deal with Facet, which LifeScan had no intention of honoring. Fourth, Cilag later insisted that Facet pledge its patents as collateral for the *existing* advance. Facet would lose its patents if it did not make timely loan payments.

7.     The final step of LifeScan's scheme was to renege on the recent commercial supply deal with Facet and to not purchase lancets and lancing devices. In early 2019, instead of buying the products that it agreed to buy from Facet only months earlier, LifeScan switched to third-party manufactured "Delica Plus" products, which intentionally mimicked Facet's patented designs for the Delica products. Because of the outstanding loan balance (and resulting temporary license), Facet was unable at that time to stop LifeScan with its patents. If Facet's financial difficulties were severe enough, Facet would miss a loan payment and it would lose the very patents that LifeScan was knowingly practicing.

8.     LifeScan's scheme did not succeed, however. Facet recently repaid the entire loan, which terminated LifeScan's temporary license. As a result, LifeScan now must stop its infringement with mimicked "Delica Plus" lancets and must pay Facet for the improper use of its patented technology.

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR

**PARTIES**

9.  Facet is a limited liability company that has one member, Facet Holdings Corporation, which was formed under the laws of Delaware and has a principal place of business in Atlanta, Georgia.

10.  Since 1969, Facet (originally known as Gainer Medical Canada) has been a medical device company that serves the global diabetes care, wound care, and drug delivery marketplaces. Today, Facet has its headquarters in Atlanta, Georgia where it designs, manufactures, and markets various medical devices throughout the United States and across the globe. Since its founding, Facet has invested tens of millions of dollars in research and development relating to medical devices, particularly including products that permit patients with diabetes to protect their health by frequently and safely testing their blood sugar levels without undue pain. This investment has led to more than two dozen patents and patent publications worldwide as well as award-winning lancing systems. Presently, Facet markets lancets under its "FMT" brand as well as through various private-label agreements.

11.  On information and belief, LifeScan is a California corporation registered to do business in California, and maintains a registered agent office located at 330 N. Brand Boulevard, Glendale, California, which is within this judicial district.

**JURISDICTION AND VENUE**

12.  This action arises under the patent laws of the United States, Title 35 of the United States Code, including in particular 35 U.S.C. § 271.

13.  This Court has subject-matter jurisdiction over the subject matter of this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.  This Court has personal jurisdiction over LifeScan in this action because LifeScan resides within the Central District of California and has committed acts within this District giving rise to this action and has established minimum contacts with the forum such that the exercise of jurisdiction would not offend traditional

notions of fair play and substantial justice. LifeScan is incorporated in California with a registered agent at 330 N. Brand Boulevard, Glendale, California. On information and belief, LifeScan, directly and through subsidiaries or intermediaries, has conducted and continues to conduct business in the State of California, including in the Central District of California. Further, LifeScan, directly and through affiliates, subsidiaries, agents, or intermediaries (including distributors, retailers, franchisees, and others) has committed and continues to commit acts of patent infringement and/or continued to commit acts of patent infringement by others in this District. As such, LifeScan has purposefully availed itself of the privilege of conducting business within this District; it has purposefully directed activities at residents of this State; and at least a portion of the patent infringement claims alleged herein arise out of or relate to one or more of the foregoing activities.

15. For example, LifeScan places the infringing products into the stream of commerce knowing that they will be sold and used in this State, and economically benefits from the sale of infringing products in this State. Specifically, LifeScan's infringing products have been sold and are available for sale in this District at retailers such as CVS, Rite Aid, and Walgreens, as well as through online retailers such as Amazon. LifeScan also advertises its infringing products to consumers in this State and this District through its website.[2]

16. Venue is proper in this District under at least 28 U.S.C. §§ 1391(b), (c), and (d) and 1400(b). LifeScan resides in this District as a California corporation with a registered agent office located at 330 N. Brand Boulevard, Glendale, California. LifeScan has committed acts of infringement in this District, directly and/or through intermediaries, and/or has transacted business in this District, including making,

---

[2] *See, e.g.*, https://www.onetouch.com/products/accessories/onetouch-delica-plus-lancing-device.

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR

using, offering to sell, selling, and/or importing into the United States products that infringe the Asserted Patent, as alleged herein.

## BACKGROUND

### Diabetes

17.    Diabetes is a dangerous and life-threatening medical condition that results when the body does not produce sufficient insulin. As a result, blood sugar (glucose) levels in patients with diabetes can cause severe health problems, such as heart attack, stroke, kidney disease, blindness, amputation, and even death.[3] According to the CDC, "[r]egular blood sugar monitoring" is "the most important thing" that a patient "can do to manage … diabetes."[4]

18.    Unfortunately, the number of patients with diabetes is growing at an alarming rate. In 2019, some 28.7 million people in the United States alone were diagnosed with diabetes.[5] Over 100 million Americans currently suffer from some form of diabetes requiring daily testing of their blood glucose levels to determine and maintain a healthy blood sugar level.[6]

19.    Such testing requires at least one, and up to seven, pinpricks each day depending on severity of the patient's disease, medications, and lifestyle. This constant use of new sterile lancets results in an ongoing danger of accidental jabs with used lancets, which the Patent-in-Suit attempts to alleviate.

---

[3] Center for Disease Control and Prevention, Monitoring Your Blood Sugar, CDC.GOV,          https://www.cdc.gov/diabetes/managing/managing-blood-sugar/bloodglucosemonitoring.html

[4] *Id.*

[5] Center for Disease Control and Prevention, National Diabetes Statistics Report, 2019, CDC.GOV, https://www.cdc.gov/diabetes/data/statistics-report/index.html.

[6] *Id.* (reporting 37.3 million people with diabetes and 96 million people with prediabetes).

**Facet & Its Proprietary Lancets**

20.   Facet is a small innovative company based in Atlanta, Georgia that focuses on assisting diabetic patients with their daily blood sugar measurement. Facet has a forty-nine-year history of medical device development and as recently as January of 2019 was one of the largest providers of lancets and lancing devices in the world.

21.   "Lancets" are tiny pointed medical instruments that allow people to draw samples of blood for testing to measure their blood sugar levels, which helps to prevent serious complications from diabetes or pre-diabetes. "Lancing devices" are medical instruments that inject the lancets and pierce the skin.

22.   Facet has significant lancets and lancing device design and manufacturing expertise. Due to that expertise, beginning in 2008, Facet became the supplier of lancets and lancing devices to major companies, including Abbott Laboratories, Roche Diagnostics GmbH, Arkray USA, Inc., and LifeScan (which was at the time a division of Johnson & Johnson ["J&J"]).

23.   To protect itself from copycat manufacturers and unscrupulous business partners, when Facet develops proprietary lancets or lancing devices, it invests heavily in developing a portfolio of patents protecting its inventions, including the Asserted Patent. For example, the Asserted Patent grew out of an effort by Facet in the mid-to-late 2000s to develop improved lancets and lancing devices that allow patients to easily, safely, and as painlessly as possible manage their condition.

**Facet Develops and Patents Lancets That LifeScan Would**
**Commercialize Under its OneTouch Delica Brand**

24.   In 2008, Facet invented a lancet and lancing device that used innovative designs and technology to shrink the size of the pointed surgical instrument and the depths of the lancet that pierces into the skin, allowing people with diabetes to test their blood relatively pain-free and with designs for easy and safe insertion and

removal of the lancet. The patented lancet design allowed for easier handling of the smaller lancets by patients (who have decreased agility due to age or neuropathy, a condition suffered by up to 50% of patients with diabetes). Decreasing the size of the lancet results in decreased pain but improving the handleability of the lancets decreases the possibility of accidental pricks while increasing ease of use.

25.   On September 23, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 8,840,635, entitled "Lancets with Improved Coupling Features and Sterility Caps." The '635 patent lists Lauren R. Pusey, Brian M. Collins, Christopher J. Ruf, Nicholas H. Reaves, and Jonathan W. Sanders as the inventors. A true and correct copy of the '635 patent is attached hereto as **Exhibit A**.

26.   The '635 patent provides improved lancet and lancet endcap configurations allowing for safer exposure of new lancets and disposal of used ones with easier handling by patients. For example, the '635 patent discloses a lancet in combination with a protective sterility cap comprising a primary sheath for initial embedment of a sharp lancing tip of an unused lancet therein, a secondary sheath for receiving the sharp lancing tip of a used lancet, and a gripping handle portion extending between the primary sheath and the secondary sheath, with the primary sheath attached at a first end of the gripping handle portion and the secondary sheath attached at a second end of the gripping handle portion when the protective sterility cap is removed from the lancet. The '635 patent provides an improved design over previously known lancets in that it, for example, facilitates ease of insertion and ejection with a lancing device and assists in the safe disposal of a used lancet.

27.   Facet is the owner of all rights, title, and interest in the Asserted Patent with full and exclusive right to bring suit to enforce the Asserted Patent, including the right to recover for any current or past damages and/or royalties up until the expiration of the Asserted Patent.

28.   The Asserted Patent is valid and enforceable.

29.   Beginning in 2008, Facet and LifeScan (through Cilag) entered into a series of exclusive supply agreements in which LifeScan would sell lancets and lancing devices patented and manufactured by Facet under the brand named "Delica." While LifeScan retained the trademark rights to that brand name, Facet retained ownership of the patent rights related to the lancets and lancing devices. From the beginning in 2008, Facet continuously apprised LifeScan that the Delica lancets and lancing devices were protected by issued and pending patents owned by Facet. On information and belief, LifeScan had specific knowledge that the Delica lancets and lancing devices were protected by patents owned by Facet, including the '635 patent. Since 2010, LifeScan has marketed and sold hundreds of millions of dollars' worth of lancets and lancing devices under the "Delica" brand name, which were made by Facet.

30.   The Delica products were very successful, both from the standpoint of providing tangible patient benefits and from the standpoint of commercial sales. Sales increased dramatically year after year as consumers abandoned other lancing systems in favor of the Delica lancing system. On information and belief, in 2018 alone, LifeScan sold over $90 million worth of Delica lancets and lancing devices. LifeScan repeatedly renewed the supply agreement from 2008 through 2019.

31.   LifeScan also used the success of Facet's lancing system to promote its extremely profitable testing strips and glucose measuring devices, creating a synergistic sales system based on Facet's safe, painless, and patented lancing systems. In 2009, J&J recognized the value of Facet's lancing systems by awarding Facet its Supplier Achievement Award.

32.   Facet's lancing system was so popular that in about 2012, Facet reached out to the Japanese company Asahi Polyslider Company, Ltd. ("Asahi") to help with

the manufacture of portions of the devices to keep up with the growing demand from LifeScan and other buyers for whom Facet made the lancets and lancing devices.

33.   In 2016, LifeScan agreed to advance Facet money to provide capital to make lancets and lancing devices for LifeScan. On information and belief, LifeScan had specific knowledge by 2016 that the Delica lancets were protected by the '635 patent.

34.   In January 2018, when LifeScan and Facet entered into what would become their last commercial supply agreement ("2018 Supply Agreement"), LifeScan insisted that Facet pledge its patents as security for the two-year old advance; if Facet defaulted on any payment, Facet would lose its patents. A "Patent Security Agreement" pledged Facet's patents as collateral to secure re-payment of the advance, including specifically the Asserted Patent. The 2018 Supply Agreement also provided a temporary patent license from Facet until that advance was fully repaid. On information and belief, LifeScan was aware of the '635 patent, and had specific knowledge that the Delica lancets and lancing devices were protected by patents owned by Facet, including the '635 patent, as of the 2018 Supply Agreement and the 2018 Patent Security Agreement.

35.   On information and belief, LifeScan deliberately negotiated the terms in the 2018 Supply Agreement and procured the 2018 Patent Security Agreement from Facet to wrongfully evade liability for infringing Facet's patents, including the Asserted Patent, when it switched lancet suppliers, as described below.

**LifeScan Conspires with One of Facet's Manufacturing Partners**

36.   On information and belief, at around the same time LifeScan entered into the 2018 Supply Agreement with Facet and procured the 2018 Patent Security Agreement from Facet, LifeScan secretly conspired with Asahi to develop an alternative supply for lancets and lancing devices (which LifeScan ultimately brought

to market under the brand name "Delica Plus" to capitalize on the success and popularity of the Delica product designed and produced by Facet).

37.   In 2014, Asahi had already attempted to inject itself into the supply chain to Facet's other customers using the skills and expertise in the construction of the lancing systems it learned from Facet as a contract manufacturer for Facet's products. On information and belief, Asahi offered discounts to LifeScan because Asahi did not have to bear the cost of product development. LifeScan and Cilag repeatedly assured Facet that LifeScan was not working with Asahi or others to freeze Facet out of its own business.

38.   By cutting Facet out of its supply chain, LifeScan reduced its costs and padded its already large profits. On information and belief, although LifeScan was aware that Facet had patents protecting its proprietary lancing devices and lancets, LifeScan believed that by pulling its supply orders from Facet, Facet either would default on the loan (thus permanently lose control of the relevant patents) or would be unable to pay off the loan, thereby extending LifeScan's temporary license to the same patents.

39.   In March of 2018, J&J agreed to sell LifeScan to Platinum Equity (a large private equity firm) for over $2 billion dollars based on the success of its diabetic services, including the sales of Facet's patented Delica lancets and lancing devices. LifeScan and its partners assured Facet that the supply relationship would continue after the sale and in September of 2018, amended the 2018 Supply Agreement to extend the Delica product supply agreement out to June of 2019 with the promise of a further renewal once the sale of LifeScan was completed. But instead, in January of 2019, just four months after that amendment, three months after the completion of the sale, after stockpiling supply and without any prior notice, LifeScan reneged on and terminated the 2018 Supply Agreement. By June, LifeScan was selling its "Delica Plus" copy products manufactured by Asahi.

40.   LifeScan manufactures, uses, imports, offers for sale, and/or sells lancets that incorporate features claimed in the Asserted Patent ("Accused Products"). The Accused Products include, but are not limited to, OneTouch Delica Plus lancets.

41.   Despite LifeScan's and Asahi's purported re-design efforts, the "new" Delica Plus products bear numerous striking similarities to the original Facet-developed and patented lancet and lancing device products:

| | FACET ORIGINAL | LIFESCAN 2018 "RE-DESIGN" |
|---|---|---|
| **LANCETS** |  *U.S. DESIGN PAT. NO. D621,044* |  |

42.   The lancets are virtually identical and are placed into the lancing devices by twisting the caps at the end of the lancing devices to remove the cap and reveal the lancet carrier, as detailed in LifeScan's own marketing materials for these products. The lancets are placed in the lancet carriers and the caps of the lancing devices, which have holes for the lancets to pass through, are then replaced over the lancets.

| | FACET ORIGINAL | LIFESCAN 2018 "RE-DESIGN" |
|---|---|---|
| Inserting lancet into lancing device. |  |  |
| Placing the cap back on the lancing device. |  |  |

43.    The Delica and Delica Plus lancets also look almost identical with covers with long handles and circular ends. The lancet covers are twisted to remove the cover and reveal the lancet. Once the lancet is used, the sharp end is stuck into the circular part of the cover so that it is sheathed by a different part of the cover and can be disposed of safely.

| | FACET ORIGINAL | LIFESCAN 2018 "RE-DESIGN" |
|---|---|---|
| Twisting off lancet cover to reveal lancet. |  |  |
| The lancet is placed in the second sheath on the lancet cover. |  |  |

44.    Shortly after arranging for alternative supply with Asahi, and with the outstanding advance to Facet now in place, LifeScan abruptly and without explanation stopped purchasing Facet's lancing devices and lancets and refused to enter into any additional supply agreements. LifeScan refused to pay the agreed-upon $2.5 million in pre-payments, only partially paying for January and February of 2019 and refusing to pay for March through June of 2019.

45.    The sudden and unexpected shift of business away from Facet, left Facet with tens of thousands of unsold units of the original Delica lancing devices and lancet products that had been previously marketed through LifeScan. This unsold stock and sudden loss of most of its revenue threw Facet into dire financial circumstances that nearly bankrupted the company. To survive, Facet was forced to fire hundreds of long-term employees (approximately 75% of its staff), driving it from a thriving mid-sized

company to a struggling small company of around 60 employees, and nearly closing its U.S.-based operations entirely.

46.   Of course, these financial difficulties made it very difficult for Facet to service the 2016 loan.

**Facet Recently Paid Off the 2016 Advance,**

**Extinguishing LifeScan's Temporary License**

47.   Facet leaned on its significant manufacturing expertise, focused on making its operations more efficient, and developed a novel continuous glucose monitoring device for a different company. The success of those efforts has allowed Facet to avoid defaulting on the 2016 loan and to otherwise regain its commercial footing.

48.   On January 19, 2022, Facet sent a check to pay off the advance in full, which automatically terminated any temporary license LifeScan might have had.

49.   Despite this payment, LifeScan has not ceased its commercial activities relating to the Accused Products.

50.   On information and belief, LifeScan has continued to import, offer for sale, sell, and/or supply the Accused Products even after the filing of the initial Complaint.

**Facet's Lancets Compete**

**with LifeScan's Infringing Products**

51.   Facet makes, offers to sell, and sells its lancets that embody the Asserted Patent through its own "FMT" brand and through retailers, such as Rite Aid and Walgreens:



52.   Facet's and LifeScan's products fill a unique niche in the marketplace by using technology that significantly decreases the level of pain in collecting blood while significantly increasing patient safety and ease of lancet handling. Facet's lancets are sold in competition with LifeScan's Accused Products. For example, these products are sold side-by-side in the following retail stores: Walgreens, Rite-Aid, H-E-B, and Diabetic Promotions.

53.   On information and belief, Facet's patented Delica/FMT lancets are interchangeable with the Delica Plus lancets used in LifeScan's Delica Plus lancing systems. Further, on information and belief, there are no acceptable non-infringing lancet alternatives available to LifeScan for use in its Delica Plus lancing systems.

54.   LifeScan advertises that its lancets use a cap that covers the unused lancet and has a portion at the opposite end of the cap that can receive and cover the used lancet.[7]

---

[7] https://www.onetouch.com/products/accessories/onetouch-delica-plus-lancing-

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR

55.     LifeScan also advertises that the Delica Plus lancing device uses a lancet that can be inserted into the lancing device and then ejected from the device by pushing the slider forward.[8] The OneTouch Delica Plus is advertised as providing "safe and effective use."[9]

56.     LifeScan also advertises that the Delica Plus lancets are compatible with the original Delica lancing device manufactured by Facet:[10]



57.     LifeScan's Delica Plus lancet embodies, incorporates, or otherwise practices one or more claims of the '635 patent. On information and belief, LifeScan imports, offers for sale, sells, and/or supplies its Delica Plus lancet in this District to retailers such as CVS, Walgreens, and Rite Aid, and to online retailers such as Amazon, who in turn sells the products to customers in this District.

## COUNT I: INFRINGEMENT OF THE '635 PATENT

58.     Facet re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

59.     In violation of 35 U.S.C. § 271(a), LifeScan has infringed and continues to infringe the '635 patent by making, using, selling, offering to sell, and/or importing into the United States, without authority, the Accused Products, which practice each

_____

device

[8] *Id*.

[9] https://diabeticoutlet.com/product/onetouch-delica-plus-lancets-100-count/

[10] https://www.onetouch.com/products/accessories/onetouch-delica-plus-lancing-device.

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR

and every limitation of at least Claims 1, 6, 8, 14, and 18 of the '635 patent. LifeScan has infringed literally and/or under the doctrine of equivalents as outlined below, which is preliminary, based on publicly available information, and non-limiting.

60.   By way of example, the Accused Products embody every limitation of and infringe at least Claim 1 of the '635 patent. The further descriptions below, which are based on publicly available information, are preliminary examples and are not limiting.

61.   LifeScan's OneTouch Delica Plus lancets include a protective sterility cap for a lancet:



62.   The sterility cap has a primary sheath for initial embedment of a sharp lancing tip of an unused lancet therein, as shown in below:



63.   The sterility cap has a secondary sheath for receiving the sharp lancing tip of a used lancet:

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR



Secondary
Sheath

64.    LifeScan's instructions for using the Delica Plus product[11] direct patients to insert the used lancet tip into the secondary sheath:



**2. Cover the exposed lancet tip**
Before removing the lancet, place the lancet protective cover on a hard surface then push the lancet tip into the flat side of the disk.

65.    The sterility cap also has a gripping handle portion extending between the primary sheath and the secondary sheath, with the primary sheath attached at the first end of the gripping handle portion and the secondary sheath attached at the second end of the gripping handle portion when the protective sterility cap is removed from the lancet as shown in below:

---

[11] OneTouch® Delica® Plus Instruction Manual, https://professional.onetouch.com/sites/onetouch_hcp_us/files/07173301b_otdp_ifu_caus_enesfr_r2_web_v1_fvid219668.pdf.

66.   The Accused Products also embody every limitation of and infringe at least Claim 6 of the '635 patent, which depends upon and incorporates Claim 1 as described above and also describes the protective sterility cap being in combination with a lancet having a lancet body defining a lancet thickness, and a sharp lancet tip initially embedded in the primary sheath, wherein the gripping handle portion defines a lateral span of at least 1.5 times the lancet thickness.

67.   The Accused Products also embody every limitation of and infringe at least Claim 8 of the '635 patent, which depends upon and incorporates Claim 6 as described above and also describes the gripping handle portion defining a length at least equal to the lancet thickness.

68.   The Delica Plus lancets also embody every limitation of and infringe at least Claims 14 and 18 of the '635 patent which include the limitations already demonstrated as having been met above.

69.   The Delica Plus lancets embody every limitation of and infringe at least Claim 14 of the '635 patent. The Accused Products include the limitations already demonstrated above in connection with Claim 6.

70.     The Delica Plus lancets have a protective sterility cap and a lancet having a lancet body. The sterility cap has a primary sheath for initial embedment of a sharp lancing tip of an unused lancet and a secondary sheath for receiving the sharp lancing tip of a used lancet.

71.     The protective sterility cap of the Delica Plus lancets also has a gripping handle portion extending between the primary sheath and the secondary sheath, with the primary sheath attached at a first end of the gripping handle portion and the secondary sheath attached at a second end of the gripping handle portion when the protective sterility cap is removed from the lancet.

72.     The protective sterility cap of the Delica Plus lancets is further in combination with a lancet having a lancet body defining a lancet thickness, and a sharp lancet tip initially embedded in the primary sheath, wherein the gripping handle portion defines a lateral span of at least 1.5 times the lancet thickness.

73.     The Delica Plus lancets also embody every limitation of and infringe at least Claim 18 of the '635 patent, which depends upon and incorporates Claim 14. It includes the limitations already demonstrated as having been met above. The Delica Plus lancets provide the protective sterility cap being in combination with a lancet having a lancet body defining a lancet thickness with a sharp lancet tip initially embedded in the primary sheath as seen above, wherein the gripping handle portion defines a length at least equal to the lancet thickness.

74.     On information and belief, in violation of 35 U.S.C. § 271(b), LifeScan has had knowledge of the '635 patent and infringement and actively, knowingly, and intentionally induced and continues to induce the infringement of the '635 patent, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the Accused Products and/or inducing the importation, use, offer for sale, and sale by others of such products covered by one or more claims

of the Asserted Patent, with specific intent to induce such actions knowing that the induced actions constitute infringement of one or more claims of the Asserted Patent.

75.    LifeScan has actively, knowingly, and intentionally instructed others, such as end users, and continues to instruct others, to directly infringe one or more claims of the '635 patent.

76.    LifeScan's affirmative acts of active encouragement include, among other things: (1) publishing user guides and engaging in other marketing activities to promote the Accused Products; (2) teaching and instructing end users how to use the Accused Products; and (3) supplying one or more components of the Accused Products.

77.    For example, LifeScan's website for the Delica Plus products includes a "Using your OneTouch® Delica® Plus lancing device" video [12] for end users describing how to use the Accused Products.

78.    On information and belief, following LifeScan's active encouragement, at least end users have used and continue to use the Accused Products, and thus have and continue to directly infringe one or more claims of the '635 patent.

79.    On information and belief, LifeScan had and continues to have the requisite knowledge and the specific intent to induce direct infringement by end users of one or more claims of the '635 patent, knowing, or being willfully blind to, the fact that the induced actions constitute infringement.

80.    On information and belief, in violation of 35 U.S.C. § 271(c), LifeScan has had knowledge of the patent and has knowingly sold and continues to contribute to the direct infringement of one or more claims of the '635 patent by offering to sell, selling, and/or importing directly or indirectly to others, such as end users, one or more components of the Accused Products, which constitute a material part of the

_____

[12] https://www.onetouch.com/products/accessories/onetouch-delica-plus-lancing-device.

invention, knowing, or being willfully blind to, the fact that those components their products are especially made or adapted for use in an infringement of the '635 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

81.   On information and belief, following LifeScan's contributory actions, others, such as end users, have used and continue to use the Accused Products and thus have directly infringed and continue to directly infringe one or more claims of the '635 patent.

82.   LifeScan is not licensed or otherwise authorized to practice the claims of the '635 patent.

83.   As a result of LifeScan's infringement, Facet has suffered and will continue to suffer damages. Facet is entitled to substantial monetary damages in an amount adequate to compensate for LifeScan's infringement, together with interest and costs as fixed by the Court.

84.   Facet is entitled to recover the damages sustained as a result of LifeScan's wrongful acts in an amount subject to proof at trial.

85.   As discussed herein, LifeScan's acts of infringement of the '635 patent herein have been committed and are being committed with full knowledge of Facet's rights in the Asserted Patent. On information and belief, LifeScan knew of the '635 patent, knew Facet owned the '635 patent, knew that the '635 patent protects its Delica products, and has acted and is continuing to act despite an objectively high likelihood that its actions constitute direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since before the filing of the initial Complaint. In addition, even after Facet filed its initial Complaint in this matter, LifeScan has not made any changes to the Accused Products (or its instructions for use) to avoid infringement. LifeScan's knowing infringement of the '635 Patent is thus wanton, malicious, intentional, deliberate, consciously wrongful,

flagrant, egregious, willful, and/or in bad faith. LifeScan's willful and deliberate infringement entitles Facet to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

86.   Facet has complied with the requirements of 35 U.S.C. § 287(a) at least because Facet provides notification that its lancets are covered by the Patent-in-Suit on its website,[13] and on information and belief, LifeScan was on actual notice that the Accused Products practice the '635 patent from LifeScan's first introduction of those products in the market. Further, on information and belief, LifeScan had notice of infringement from the time that Facet terminated LifeScan's temporary license, as described above. Still further, on information and belief, Facet provided LifeScan with actual notice of infringement no later than March 15, 2022, in connection with filing the initial Complaint.

87.   To the extent that LifeScan's litigation conduct supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to Facet is justified pursuant to 35 U.S.C. § 285.

88.   Unless and until enjoined by this Court, LifeScan will continue to infringe the '635 patent and as a direct result Facet will continue to suffer harm, including irreparable harm for which damages are inadequate. Accordingly, Facet is entitled to injunctive relief against such infringement under 35 U.S.C. § 283 enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the '635 patent claims.

89.   Facet has suffered and will continue to suffer damage as a direct and proximate result of LifeScan's infringement of the '635 Patent. Thus, in addition to injunctive relief, Facet is entitled to recover damages for such infringement pursuant to 35 U.S.C. § 284 in an amount subject to proof at trial.

_____

[13] https://facetmed.com/legal-notices/patent-notice/.

\*      \*      \*      \*      \*

## **PRAYER FOR RELIEF**

WHEREFORE, Facet respectfully prays that this Court enter a judgment as follows:

A.      Declaring that LifeScan has infringed the '635 patent;

B.      Declaring that LifeScan has willfully infringed one or more claims of the '635 patent;

C.      Granting a permanent injunction prohibiting LifeScan, its officers, directors, attorneys, agents, servants, employees, parties in privity with, and all persons in acting in concert or participation with any of the foregoing and their successors and assigns, from continued acts of infringement or contributing to the infringement of any claim of the '635 patent, or from inducing others to infringe any claim of the '635 patent;

D.      Awarding damages to Facet to compensate it for LifeScan's infringing activities, including an accounting and/or supplemental damages for any infringing sales not presented at trial and through final judgment, together with pre-judgment and post-judgment interest as allowed by law, and other damages permitted under 35 U.S.C. § 284;

E.      Finding LifeScan's infringement to be willful and awarding enhanced damages in an amount to be treble the amount of compensatory damages as justified under 35 U.S.C. § 284;

F.      Finding that this action is exceptional pursuant to 35 U.S.C. § 285 and under the Court's inherent powers, and an award to Facet of its entire costs and expenses of litigation, including all attorneys' fees, out-of-pocket or third-party costs, and experts' fees incurred in connection with this action, together with pre-judgment and post-judgment interest on all such costs and expenses awarded;

1          G.     Awarding a compulsory ongoing licensing fee to compensate for future

2    acts of infringement by LifeScan;

3          H.     Awarding costs and expenses in this action; and

4          I.     Awarding any relief as the Court deems just and equitable.

Dated: November 22, 2022                    Respectfully submitted,

By: */s/ Jeffrey G. Homrig*

WITKOW | BASKIN
Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
Tel: 818.296.9508 | Fax: 818.296.9510

LATHAM & WATKINS LLP

Jeff Homrig (SBN 215890)
Madeleine Ball (SBN 336923)
301 Congress Ave., Suite 900
Austin, TX 78701
(737) 910-7300
jeff.homrig@lw.com
madeleine.ball@lw.com
Rachel Cohen (*pro hac vice* forthcoming)
Susan Tull (*pro hac vice* forthcoming)
Jessica Lam (*pro hac vice* forthcoming)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
rachel.cohen@lw.com
susan.tull@lw.com
jessica.lam@lw.com
Ryan Banks (SBN 318171)
140 Scott Drive
Silicon Valley, CA 94025
(650) 328-4600


DIAMOND McCARTHY LLP
Allan B. Diamond (*pro hac vice* forthcoming)
Julian Cokic (*pro hac vice*)
909 Fannin Street, 37th Floor
Houston, Texas 77010
Tel: 713.333.5100 | Fax: 713.333.5199
adiamond@diamondmccarthy.com
julian.cokic@diamondmccarthy.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Grace J. Pak (SBN 277705)
\
150 California Street, Suite 2200
San Francisco, California 94111
Tel: 415.692.5200 | Fax: 415.263.9200
grace.pak@diamondmccarthy.com

*Attorneys for Plaintiff, FACET
TECHNOLOGIES, LLC*

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Facet hereby respectfully demands a trial by jury as to all issues in this action so triable.

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR

Dated: November 22, 2022

Respectfully submitted,

By: */s/ Jeffrey G. Homrig*

WITKOW | BASKIN
Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
21031 Ventura Boulevard I Suite 700
Woodland Hills I California I 91364
Tel: 818.296.9508 | Fax: 818.296.9510

LATHAM & WATKINS LLP
Jeff Homrig (SBN 215890)
Madeleine Ball (SBN 336923)
301 Congress Ave., Suite 900
Austin, TX 78701
(737) 910-7300
jeff.homrig@lw.com
madeleine.ball@lw.com

Rachel Cohen (*pro hac vice*)
Susan Tull (*pro hac vice*)
Jessica Lam[14] (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
rachel.cohen@lw.com
susan.tull@lw.com
jessica.lam@lw.com

Ryan Banks (SBN 318171)
140 Scott Drive
Silicon Valley, CA 94025
(650) 328-4600
ryan.banks@lw.com

First Amended Complaint
Case No. 2:22-cv-01717-MCS-MAR

DIAMOND McCARTHY LLP
Allan B. Diamond (*pro hac vice*)
Julian Cokic (*pro hac vice*)
909 Fannin Street, 37th Floor
Houston, Texas 77010
Tel: 713.333.5100 | Fax: 713.333.5199
adiamond@diamondmccarthy.com
julian.cokic@diamondmccarthy.com

Grace J. Pak (SBN 277705)
150 California Street, Suite 2200
San Francisco, California 94111
Tel: 415.692.5200 | Fax: 415.263.9200
grace.pak@diamondmccarthy.com

*Attorneys for Plaintiff, FACET TECHNOLOGIES, LLC*

---

[14] Admitted to practice in New York only. All work supervised by a member of the DC Bar.